OPINION
{¶ 1} Appellant Vickie Bourne appeals from the July 8, 2004, Judgment Entries of the Tuscarawas County Court of Common Pleas, Juvenile Division, which granted permanent custody of appellant's three children to the Tuscarawas County Job and Family Services [hereinafter the agency].
STATEMENT OF THE FACTS AND CASE
 {¶ 2} Appellant is the natural mother of Raymond Wayne Sanders (dob June 28, 2002), Stephen Lee Sanders (dob August 3, 2003) and Bradlie William Sanders (dob June 5, 2004). Charles Sanders is the natural father of the three children.
 {¶ 3} The agency became involved with appellant and her child(ren) in December, 2002, when Charles Sanders reported that appellant threatened to smother Raymond in an attempt to retaliate against Charles. At that time, Raymond was very young and Stephen and Bradlie had not been born.
 {¶ 4} On January 3, 2003, Raymond was placed in substitute care and placed in the temporary custody of Christine Erwin, Raymond's maternal aunt, under the protective supervision of the agency. On January 6, 2003, the agency filed a complaint, in which it alleged that Raymond was a neglected and dependent child. On February 28, 2003, the matter came on for an adjudicatory hearing. Upon motion, the trial court amended the complaint by dismissing the count which alleged that Raymond was neglected and by amending the language of the count which alleged dependency. Appellant and Mr. Sanders then admitted to the allegations in the complaint. The trial court also adopted a case plan and ordered that Raymond be placed in the temporary custody of Christina Irwin, under the protective supervision of the agency.
 {¶ 5} While the case concerning Raymond was pending, appellant was pregnant with Stephen. Stephen was born on August 3, 2003, and placed in the temporary custody of the agency on August 6, 2003.
 {¶ 6} On October 30, 2003, upon all parties' and the Guardian Ad Litem's recommendation, the trial court placed Raymond in the temporary custody of the agency. In so doing, the trial court noted that a home study of Christine Irwin's residence revealed that a known sex offender was residing in the home.
 {¶ 7} On February 13, 2004, the agency filed a motion concerning Raymond and Stephen in which it sought to modify the prior disposition from temporary custody to permanent custody. The hearing on those matters was set for June 11, 2004, but was continued subsequent to the birth of Bradlie on June 5, 2004. Bradlie was placed in the temporary custody of the agency on June 7, 2004. On that date, the agency filed a complaint alleging that Bradlie was a dependent child. The complaint was subsequently amended on June 8, 2004, to include an abuse allegation as Bradlie tested positive for marijuana at birth.
 {¶ 8} On July 8, 2004, adjudication of the complaint concerning Bradlie took place in conjunction with the permanent custody hearing in the two pending cases concerning Raymond and Stephen. Thus, after entering a finding that Bradlie was an abused and dependent child, disposition of the case concerning Bradlie was combined with the agency's request for permanent custody of the two older children. The agency sought permanent custody of Bradlie, too. Prior to the presentation of evidence, Charles Sanders, the father of all three children, stipulated to the permanent custody motion indicating to the trial court that he did not wish to oppose permanent custody in regard to all three children.
 {¶ 9} The hearing then proceeded. Testimony showed that during the agency's involvement, appellant and Charles Sanders were repeatedly involved in incidents of domestic violence. Appellant was the victim of this violence and there were three separate criminal charges filed against Charles Sanders for domestic violence incidents involving appellant. However, testimony showed that Charles Sanders and appellant repeatedly violated no-contact orders issued in the domestic violence cases. Appellant admitted violating the no-contact orders, stating that she believed it was more important for the two of them to work on their relationship than to abide by court orders.
 {¶ 10} In addition, testimony showed that appellant completed little of her case plan. Although appellant completed a psychological evaluation, appellant failed to complete the recommended counseling. Appellant was discharged from parent education at the agency for failing to regularly attend the program. Appellant subsequently completed another course of parent education, however, there was testimony to demonstrate that appellant failed to apply any of the information in her visitations with the children. Appellant failed to complete domestic violence treatment.
 {¶ 11} Appellant never obtained stable housing during the pendency of this matter. Appellant was living with her father. She continued to live with her father despite the fact that appellant was advised early on that her father's history involving allegations of sexual abuse made his home an inappropriate place for her children to be reunified with her.
 {¶ 12} As to employment, appellant worked one month during the pendency of these cases. Appellant testified that she had several health problems which precluded working and had applied for disability Social Security benefits.
 {¶ 13} At the hearing, appellant admitted that she stole benefits from the agency, leading to her inability to obtain gas vouchers for transportation. Appellant also testified to four separate incarcerations during the pendency of these matters. These incarcerations related to convictions for writing bad checks. Appellant also admitted to using marijuana during the final months of her third pregnancy.
 {¶ 14} Appellant had weekly visitation with the child(ren). Out of the 70 to 80 opportunities for visits, appellant missed 20 visits.
 {¶ 15} At the conclusion of the evidence, the trial court issued a ruling from the bench granting the State's request for permanent custody. Corresponding Judgment Entries were filed July 9, 2004. Those Judgment Entries granted permanent custody of all three children to the agency.
 {¶ 16} It is from these Judgment Entries that appellant appeals, raising the following assignments of error:
 {¶ 17} "I. Job and family services failed to prove by clear and convincing evidence that the award of permanent custody was in the child's [sic] best interest, and the juvenile court therefore erred in awarding permanent custody of the child [sic] to the state.
 {¶ 18} "II. The judgment of the trial court in granting permanent custody of raymond wayne sanders, stephen lee sanders and bradlie william sanders was against the manifest weight of the evidence and contrary to law.
 {¶ 19} "III. The trial court erred by concluding that there was clear and convincing evidence that it was in the best interest of the minor child of the appellant to be placed in the custody of the tuscarawas county job and family service.
 {¶ 20} "IV. The trial court committed prejudicial error in its decision granting in [sic] a permanent custody motion without considering wishes of the child.
 {¶ 21} "V. The trial court abused its discreton in sustaining the motion for permanent custody of the tuscarawas county job and family services in that the requirements of ohio revised code 2151.414(d) were not met.
 {¶ 22} "VI. Job and family services failed to prove by clear and convincing evidence that the award of permanent custody was in the child's best interest, and the juvenile court therefore erred in awarding permanent custody of the child to the state.
 {¶ 23} "VII. The guardian ad litem must fail to make independent investigation and file their report and recommendations prior to the commencement of the hearing or the motion for permanent custody and the guardian ad litem address each and every one of the matters set forth in revised Code 2151.413(d), (1), (2), (3) and (4) [sic].
 {¶ 24} "VIII. The trial court erred in awarding permanent custody to the state where the court did not find that by clear and convincing evidence that certain criteria set forth in revised Code 2151.413(B)(1), and 2151.413(D)(1), (2), (3), (4) and (5) have been met, and the court must state those findings and that the court considered each and every item required by statute on the record so it is clear to all parties that the decision is supported by the facts. revised Code 2151.414(b), (1) and revised code 2151.413(D)(1), (2), (3), (4) and (5) [sic].
 I, II, III and VI {¶ 25} In the first, second, third and sixth assignments of error, appellant essentially contends that the decision to grant permanent custody to the agency was against the manifest weight of the evidence. We disagree.
 {¶ 26} Revised Code 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. That statute provides as follows:
 {¶ 27} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 28} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 29} "(b) The child is abandoned.
 {¶ 30} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 31} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 32} Revised Code 2151.414(E) sets forth factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Specifically, Section (E) provides, in pertinent part, as follows:
 {¶ 33} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 . . . of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 . . . of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 34} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 35} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment.Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978),54 Ohio St.2d 279, 376 N.E.2d 578.
 {¶ 36} In this case, the trial court found that the children cannot and should not be placed with appellant within a reasonable time and that it was in the best interest of each child to be placed in the permanent custody of the agency. This Court will first address the trial court's finding that the children cannot and should not be placed with appellant.
 {¶ 37} Testimony showed that despite reasonable case planning and diligent efforts by the agency to assist appellant to remedy the problems that initially caused the children to be placed outside the home, appellant had continuously and repeatedly failed to substantially remedy the conditions which caused the children to be placed outside appellant's home.
 {¶ 38} Appellant's case plan contained the following items: 1) complete parenting classes; 2) complete a psychological and follow up on recommendations; 3) attend domestic violence group and/or counseling at Harbor House and follow any recommendations from Harbor House; 4) find and keep appropriate housing; 5) have adequate income; 6) obtain prenatal care during pregnancies; and 7) address transportation concerns.
 {¶ 39} Appellant did complete a parenting education class. This was accomplished after she was first dismissed from the education program offered by the agency because she missed too many classes. However, those that observed appellant in visitation with her children testified that she did not apply what was taught in the parent education course to her interaction with the children.
 {¶ 40} Appellant obtained a psychological evaluation but failed to continue in the recommended individual counseling. Appellant at one time did obtain counseling but was dropped because she missed too many appointments.
 {¶ 41} Appellant did participate in the Harbor House program but either quit, as appellant claims, or was dismissed, as the agency claimed. In either case, appellant did not complete this portion of the case plan. As to the issues of domestic violence and her relationship with Mr. Sanders, appellant stated that her relationship with Charles was not clear. Throughout this time, appellant and Mr. Sanders violated court protective orders because appellant felt it was important for them to work on their relationship.
 {¶ 42} Appellant has failed to find and maintain adequate housing. Appellant continues to reside with her father despite being advised that his home was inappropriate for the children since there have been allegations of sexual abuse lodged against him. Testimony showed that appellant did get on a list for housing at Metropolitan Housing but has not been able to obtain appropriate housing.
 {¶ 43} Appellant has failed to obtain an adequate income. Appellant worked for a telemarketing service for one month after Raymond was removed from her home. Appellant has not been otherwise employed. While appellant maintains that she is unable to work and has applied for disability social security benefits, the fact remains that appellant has failed to meet this portion of the case plan.
 {¶ 44} Appellant was to obtain adequate prenatal care while pregnant. However, testimony showed that appellant kept appointments with her doctors only sporadically. In fact, appellant told one of the social workers assigned to the case that she did not feel that prenatal care was necessary.
 {¶ 45} Lastly, as to transportation issues, appellant had many transportation issues throughout this period that, according to appellant, caused her to miss many visitations with the children and appointments with counselors and doctors. Testimony showed that the agency tried to alleviate this concern by providing gasoline vouchers. However, the vouchers were discontinued when appellant lied to obtain vouchers to which she was not entitled. Appellant would lie and tell the agency that she had appointments that she did not really have in order to get vouchers. In addition, the agency offered to transport appellant to appointments but testimony showed that appellant used this service very little.
 {¶ 46} Upon review of the testimony presented, we find that there was competent, credible evidence that appellant failed to remedy the problems that initially caused the children to be removed from appellant's home.
 {¶ 47} The next issue is whether it was in the children's best interest to grant permanent custody to the agency. In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 48} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 49} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 50} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 51} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 52} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 53} Subsection (E)(7) to (11) of R.C. 2151.414 provides as follows:
 {¶ 54} "(7) The parent has been convicted of or pleaded guilty to one of the [enumerated offenses].
 {¶ 55} "(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food. . . ."
 {¶ 56} "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued . . . requiring treatment of the parent . . .
 {¶ 57} "(10) The parent has abandoned the child.
 {¶ 58} "(11) The parent has had parental rights involuntarily terminated . . . with respect to a sibling of the child."
 {¶ 59} In this case, the testimony showed that the three children had been placed together in a foster home that would consider adopting them. Raymond had some developmental delays, caused by lack of stimulation, when removed from appellant's home. Since being placed in his foster home, Raymond has improved. In addition, when Raymond was removed from appellant's home, he had been showing aggression toward other children by hitting other kids. Raymond's behavior has improved since being placed in the foster home.
 {¶ 60} Appellant's interaction with the children has been observed while she has visited with the children. When having visitation with Raymond and Stephen, appellant had difficulty giving attention to both children. In addition, appellant was described as having unrealistic expectations about the children's behavior considering their age. These unrealistic expectations continued even after appellant completed the educational program. Due to the children's ages their wishes are difficult if not impossible to determine but, at times, Raymond would cry during visitations and go to the door to leave, apparently indicating a desire to leave.
 {¶ 61} Testimony was also presented concerning a statement appellant once wrote concerning Raymond. On the day that appellant told Mr. Sanders that she had tried to drown and smother Raymond, appellant wrote a statement which stated that she no longer wanted Raymond. That statement was as follows:
 {¶ 62} "I Vickie Jo Bourne give Charles Stephen Sanders full rights to Raymond Wayne Bourne! I give Charles all of my rights to Raymond. I no longer want this child."
 {¶ 63} Based upon the testimony presented, the trial court did not err in finding it was in the children's best interest for permanent custody to be granted to the agency.
 {¶ 64} Accordingly, we find that the trial court's decision to grant permanent custody to the agency was not against the manifest weight of the evidence. Appellant's first, second, third and sixth assignments of error are overruled.
 IV {¶ 65} In the fourth assignment of error, appellant contends that the trial court committed prejudicial error when it failed to consider the wishes of the children. We disagree.
 {¶ 66} Revised Code 2151.414(D)(2) requires the trial court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child" when the trial court determines the best interest of a child.
 {¶ 67} In this case, the trial court stated that it had considered all of the factors listed in R.C. 2151.414, in reaching its conclusion that it was in the children's best interests for permanent custody to be granted to the agency. Thus, the trial court stated that it considered the wishes of the children with due regard to their maturity and as expressed by the guardian ad litem. The oldest child was only two years old. The guardian ad litem stated in her report that the children could not verbalize their wishes and desires but noted that Raymond and Stephen appeared to be comfortable with appellant in a supervised setting. Certainly there is no prejudicial error under these circumstances.
 {¶ 68} Appellant's fourth assignment of error is overruled.
 V VIII {¶ 69} In the fifth and eighth assignments of error, appellant argues that the trial court abused its discretion when it granted the agency's motion for permanent custody without considering R.C. 2151.414(B)(1) and (D) and making specific findings as to those subsections of the statute.
 {¶ 70} First, the trial court stated that it considered all of the factors delineated in R.C. 2151.414. Thus, this Court finds no merit to appellant's assertion that the trial court failed to consider R.C. 2151.414(B)(1) and (D).
 {¶ 71} This Court will next address the issue as to whether the trial court made the appropriate findings pursuant to R.C. 2152.414(B)(1).[1] Upon review, it is apparent that the trial court made a finding pursuant to R.C. 2151.414(B)(1)(a). Although the better practice would be to make a finding that state's the whole text of R.C. 2151.414(B)(1)(a), we find no reversible error pursuant to the trial court's findings.
 {¶ 72} This court will now address the trial court's lack of findings concerning R.C. 2151.414(D). First, we note that a trial court must only file a witten opinion which sets forth its findings of fact and conclusions of law if requested to do so by a party. R.C. 2151.414(C). In this case, no such request was made. Therefore, the trial court was not required to state its findings of fact. Second, this issue has been raised to this court in the past. When faced with a similar argument and the same statement by the trial court that it had considered all of the factors delineated in R.C. 2151.414, this court held as follows: "The fact [that] the trial court did not specifically mention each of the factors listed in R.C. 2151.414(D) does not mean the trial court did not consider such factors. In the absence of demonstrable evidence to the contrary, and given the presumption of regularity, we find that the trial court did consider each of the relevant statutory factors. This position is bolstered by the trial court's specific recitation [that] the statutory factors were considered." In In re Schupbach Children
(July 6, 2000), Tuscarawas App. 2000AP010005, 2000 WL 964981.
 {¶ 73} Accordingly, we find the trial court did not abuse its discretion when it failed to make specific findings as to R.C.2151.414(D).
 {¶ 74} Appellant's fifth and eighth assignments of error are overruled.
 VII {¶ 75} In the seventh assignment of error, appellant contends that the guardian ad litem failed to make an independent investigation and failed to address each and every one of the matters set forth in R.C. 2151.413(D), (1), (2), (3) and (4) in the guardian ad litem report. Specifically, appellant asserts that the guardian ad litem report reveals that the guardian ad litem merely summarized the agency record, made only a brief reference to the desires of the children and did not address all the issues set forth in R.C. 2151.414(D), (1), (2), (3), (4) and (5).[2]
 {¶ 76} It is worth noting that a number of courts have determined that when parents cannot establish any prejudice arising from the action or non-action of a guardian ad litem, it is harmless error. See, In the matter of Malone (May 11, 1994), Scioto App. No. 93CA2165, unreported; In re: Doe (Sept. 17, 1993), Lucas App. No. L-92-296; In the Matter of SchupbachChildren (July 6, 2000), Tuscarawas App. No. 2000AP010005. However, a review of the guardian ad litem report reveals that the guardian ad litem stated that she based her report upon the following:
 {¶ 77} "The undersigned reviewed the Tuscarawas County Job and Family Services cases file: spoke with providers; observed visits between the parents and the children; made visits to the foster home/relative placement; participated in court hearings and reviews; and attended Semi Annual Reviews."
 {¶ 78} We disagree with appellant that the guardian ad litem merely summarized the agency record. The guardian ad litem lists the independent actions she took to perform an independent investigation and form an opinion. It is clear the guardian ad litem observed the children with both the parents and the foster parents and conducted an independent investigation.
 {¶ 79} We now turn to appellant's contention that the guardian ad litem failed to address the issues listed in R.C.2151.414(D).[3] However, there is no statute that requires a guardian ad litem to address in their report each issue set forth in R.C. 2151.414(D)(1)-(5). Further, in this case, the guardian ad litem essentially addressed those issues.
 {¶ 80} The guardian ad litem made the following statements concerning the facts of the case which indicate that the guardian ad litem considered and addressed those factors:
 {¶ 81} "This case involves three very young children, two of which were born during the open court case for Raymond. The family situation had not improved with each addition to the family and subsequently, each new child born to this couple was taken into protective custody. The parents marginally complied with case plan services, have had no stable housing, have been incarcerated off and on during this case, and continued to have domestic violence between them. Raymond spent approximately nine (9) months in a relative placement but that placement proved to be unsuitable due to a significant children services history for a relative residing in that home, as well as a known sex offender "frequenting" the home. Raymond was placed in foster care on or around October 28, 2003, with his brother, Stephen. Bradlie was also placed in the same foster home.
 "CHILDREN SERVICES HISTORY {¶ 82} "Due to the ages of these children, history with TCJFS is relatively short. On or around December 30, 2002, a referral alleged that Mr. Sanders shoved Ms. Bourne. Mr. Sanders also told police that Ms. Bourne tried to drown and smother the baby. Ms. Bourne also gave Mr. Sanders a letter giving all rights to the child to Mr. Sanders (See Attachment A) [omitted]. Neglect was substantial and emotional maltreatment was indicated. Raymond was placed in the home of a maternal aunt under a "Safety Plan". A Complaint alleging Neglect and Dependency was filed on January 6, 2003.
 {¶ 83} "Both parents have a history of physical and sexual abuse, as well as neglect, when they were children. Ms. Bourne admitted to being involved in two domestic disturbances with Mr. Sanders in November and December, 2002. Ms. Bourne also admitted to using Raymond to "spite" Mr. Sanders into being more involved with his son. She denied ever harming Raymond. Raymond had gross motor delays due to possible lack of stimulation as a result of residing with his parents. Occupational and physical therapy was recommended for Raymond.
 "PARENT/FAMILY PARTICIPATION {¶ 84} "The parents have visited with Raymond and Stephen. There have been no visits with Bradlie since his discharge from the hospital. Mr. Sanders has not had contact with the children for a number of months.
 {¶ 85} "Domestic violence continues to occur between these parents. Two incidents occurred on January 10, 2003 and on January 15, 2004. Legal issues also continue to plague these parents as both have been incarcerated several times over the course of this case.
 "OBSERVATIONS AND CHILDREN'S EXPRESS WISHES {¶ 86} "Due to the age of these children, their express wishes and desires cannot be verbalized to the undersigned. The undersigned has observed Raymond and Stephen with their parents and the children appear to be comfortable in the supervised setting.
 "SUMMARY AND RECOMMENDATIONS {¶ 87} "This case involves three very young children. Raymond just turned two years old, Stephen is eleven months old, and Bradlie is one month old. Unfortunately, the conditions that necessitated the removal of Raymond never improved with these parents. They are barely able to care for themselves, let alone three young children. Unemployment, lack of housing, lack of transportation and domestic violence continued to be problems for the Sanders. There are very significant past issues in both parents' lives that prevent them from moving through their current relationship and situational problems today. They are making poor choices for themselves, and are unable to provide the basic necessities for three small children. Raymond, at six months, was significantly delayed when he was removed from the parent's care. Fortunately, the younger children were not subjected to neglectful parenting. All three children are doing well in care. No appropriate relative is available to take custody of any of the children. It is the undersigned's recommendation that permanent custody be awarded to TCJFS in order for these children to be placed for adoption." Report of Guardian Ad Litem, filed July 8, 2004 (emphasis omitted).
 {¶ 88} Although the guardian ad litem did not specifically identify R.C. 2151.414(D), the factual matters addressed concern the factors delineated in the statute. Thus, it is apparent that the guardian ad litem considered and addressed the issues found in R.C. 2151.414(D).
 {¶ 89} Accordingly, appellant's seventh assignment of error is overruled.
 {¶ 90} The judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J., Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
"(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
"(b) The child is abandoned.
"(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
"(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twentytwo month period ending on or after March 18, 1999."
The trial court found as follows: "Based upon the facts presented at the evidentiary hearing and the recommendation of the Guardian ad Litem, the Court finds that Raymond Wayne Sanders and Stephen Lee Sanders cannot be placed with either parent within a reasonable time." The trial court made an identical finding in a separate judgment entry in regard to Bradlie William Sanders.
[2] Appellant states that the guardian ad litem failed to address the issues set forth in R.C. 2151.413(D)(1) — (5). However, upon review we conclude that appellant meant to cite R.C. 2151.414(D)(1)-(5).
[3] R.C. 2151.414(D) states as follows:
"In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following: "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."