[Cite as *In re D.T.*, 2020-Ohio-3808.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTERS OF:

    D.T. and H.T.

    ALLEGED ABUSED,
    NEGLECTED AND/OR
    DEPENDENT CHILDREN

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. John W. Wise, J.
Hon. Earle E. Wise, Jr., J.

Case Nos. 20 CA 000004 and
               20 CA 000005

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 217-2043 and 218-2060 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 20, 2020 |

APPEARANCES:

For Appellee

ASHLEY L. JOHNS
KNOX COUNTY DJFS
117 East High Street
Mount Vernon, Ohio 43050

For Appellant

PORTER R. WELCH
WELCH LEGAL SERVICES, LLC
21 1/2 Middle Street, P. O. Box 125
Galena, Ohio 43021

*Wise, John, J.*

{¶1}     Appellant, Heather T., appeals the decision of the Knox County Court of Common Pleas, Juvenile Division, which granted Knox County Department of Job and Family Services' ("Agency") motion for permanent custody of her two children: D.T. and H.T. The following facts give rise to this appeal.

## FACTS AND PROCEDURAL HISTORY

{¶2}     Appellant is the biological mother of D.T. and H.T. D.T. was born January 28, 2013 and H.T. was born May 16, 2018. Ray T. is the father of D.T., and H.T.'s father is unknown.

{¶3}     D.T. was initially removed from Appellant's care by the Agency due to housing concerns including drug abuse by Appellant, homelessness, and lack of contact with minor children in March of 2017. The Agency attempted to engage Appellant in the court ordered case plan.

{¶4}     On March 23, 2017, the Agency filed a Complaint alleging D.T. was neglected and dependent. The complaint alleged the Agency originally removed D.T. from Appellant's care due to housing concerns. The case quickly developed additional concerns including drug abuse, homelessness, and lack of contact with minor children.

{¶5}     On April 6, 2017, a preliminary hearing was held in which the court granted temporary custody of D.T. to the Agency.

{¶6}     On April 19, 2017, the trial court held an adjudication hearing which found D.T. to be dependent.

{¶7}     At a dispositional hearing held May 17, 2017, the court adopted a case plan and continued temporary custody of D.T. to the Agency.

{¶8}     In the matter of H.T., on May 18, 2018, the Agency filed an Ex Parte Emergency Shelter Care Motion requesting temporary custody of H.T., which was granted. On that same day the Agency filed a complaint alleging H.T. was dependent.

{¶9}     An adjudicatory hearing took place on June 15, 2018, finding H.T. was dependent.

{¶10}    On June 17, 2018, the court adopted a case plan and continued temporary custody of H.T. to the Agency at a dispositional hearing.

{¶11}    On December 4, 2018, the Agency filed a Motion for Permanent Custody of D.T., and on July 23, 2019, the Agency filed a Motion for Permanent Custody of H.T. On July 24, 2019 the Agency renewed their Motion for Permanent Custody of D.T.

{¶12}    On October 31, 2019, the trial court held a permanent custody hearing, to which Appellant did not show up, granting the Agency's Motions for Permanent Custody and dismissing all other pending motions.

{¶13}    The following evidence was adduced at the permanent custody hearing.

{¶14}    At the permanent custody hearing, the court heard testimony from Judy S., Maternal Grandmother of D.T. and H.T., Agency coordinator Raymond Guajardo, Clinical Therapist, Nicole Peterson, Family Aide, Nature McPeek, caseworker Deanne Bobo, and Guardian Ad Litem, Mary Ellen Fulk.

{¶15}    Maternal Grandmother testified she believed she could give D.T. a good home. She has made updates to her home, remediating the issues the Agency pointed out during its inspection noted below. She has started to look into counseling to help D.T. with his needs. However, she has not contacted any services as she wanted to see the

outcome of the permanent custody hearing first. She believes that she and D.T. are close, and he won't harm himself or anyone in her family while he is under her care.

{¶16}    She lives in her home with her other adult daughter, not Appellant, who is currently seeking employment, and her adult son, who is on social security disability. Maternal Grandmother is also on social security disability.

{¶17}    Maternal Grandmother missed the past two visits with D.T. due to a broken finger on her left hand, but does all she can to attend the visits. She has shown up for all other visits with D.T. that she knew about, but most times Agency does not show.

{¶18}    Maternal Grandmother further testified she has only been able to see H.T. three times since he has been born. She said she would have gone more, but those responsible for the visits never invited her or got back to her when she inquired.

{¶19}    On October 10, 2019, Maternal Grandmother had to call law enforcement on Appellant as Appellant was laying on her bathroom floor with a needle on her lap and she does not tolerate drugs in her house.

{¶20}    Maternal Grandmother testified she was found to have neglected minor children in her care in December of 2017.

{¶21}    At the hearing DeAnne Bobo, an employee with the agency, testified during Appellant's three most recent random drug screenings she tested positive for both methamphetamine and amphetamine. She testified Appellant failed to complete her recommended treatment plan at Riverside Recovery.  She participated in only two in-person interviews with D.T., and only attended twenty-two of the forty-six scheduled visitations with H.T.

{¶22}     Bobo also testified that as of October 24, 2019, Appellant was homeless and told Bobo she was living "here and there."

{¶23}     Ray Gajardo, an employee of the Agency responsible for assessing homes to see if they are safe for placement, testified as to the condition of Maternal Grandmother's home. Upon the initial inspection in April of 2019, the Agency observed gas canisters, garbage bags, and Appellant's belongings scattered around; the home had a crossbow with arrows on the wall unlocked; the second floor smoke detector was inoperable; the gun safe containing weapons with ammunition was left open; and there were no screens on the second floor windows.  In two follow-up attempts to check on changes made to the home they were unable to obtain access. The first attempt on October 28, 2019, Maternal Grandmother was on her way to an appointment, and she would not grant access. On October 30, 2019, there was no answer.

{¶24}     Nicole Peterson, a clinical therapist for D.T. testified D.T. is currently undergoing individual counseling once a week, case management two times a month, and is on medication. D.T. has a history of self-harm and has been acting out in school. Peterson testified D.T. had bonded with his foster family, and the foster mom has appeared to be able to understand D.T.'s needs. Peterson further testified in her professional opinion, she believed D.T.'s traumatic events started at Maternal Grandmother's house, and she would recommend against placing him back in that situation.

{¶25}     Nature McPeek, a family aide employee with the Agency, testified she had supervised Appellant's visits with H.T. McPeek testified that Appellant still attempts to hold H.T. like a baby and will not put him down to play or explore. Appellant has to wear

a gown for her visits with H.T. because she has tested positive for methamphetamine and amphetamine at every visit.

{¶26}   Mary Ellen Fulk, the guardian ad litem for D.T., recommends D.T. does not go to live with Maternal Grandmother because of his behavioral issues. Fulk told the court she was unable to ascertain whether or not D.T. agrees with Fulk's recommendation to grant permanent custody to the Agency.

{¶27}   Fulk also testified that the Agency should be granted permanent custody for H.T. H.T. has already bonded with the foster parents, and, in her opinion, Appellant is unable to care for H.T.

**ASSIGNMENTS OF ERROR**

{¶28}   Thereafter, Appellant timely filed her notice of appeal. She raises the following four Assignments of Error:

{¶29}   "I. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN ARE SERVED BY GRANTING PERMANENT CUSTODY TO THE KNOX COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶30}   "II. THE TRIAL COURT ERRED IN ALLOWING THE MOTION FOR PERMANENT CUSTODY TO PROCEED OR GRANTING THE MOTION DUE TO A LACK OF REASONABLE EFFORTS.

{¶31}   "III. THE TRIAL COURT FAILED TO REQUIRE A WRITTEN REPORT OF THE GUARDIAN AD LITEM AS REQUIRED BY R.C. §2151.515(C) PRIOR TO OR AT THE TIME OF THE HEARING ON PERMANENT CUSTODY.

{¶32}    "IV.   THE   TRIAL   COURT   ABUSED   ITS   DISCRETION   BY   NOT
CONSIDERING   THE   WISHES   OF   THE   CHILD   AS   REQUIRED   BY   R.C.
§2151.414(D)(1)(b)."

**I.**

{¶33}    In her First Assignment of Error, Appellant challenges the trial court's
decision to grant permanent custody of the children to the Agency. Specifically, Appellant
claims the decision was against the sufficiency and manifest weight of the evidence to
find the children's interests were best served with granting permanent custody to the
Agency. We disagree.

**Sufficiency and Manifest Weight**

{¶34}    Sufficiency of the evidence is a test of adequacy to determine if the
evidence is legally sufficient to sustain a decision. This is a question of law to be reviewed
de novo by this Court. *State v. Thompkins*, (1997) 78 Ohio St.3d 380, 386.

{¶35}    When reviewing for manifest weight, the standard in a civil case is identical
to the standard in a criminal case: a reviewing court is to examine the entire record,
weigh the evidence and all reasonable inferences, consider the credibility of witnesses
and determine "whether in resolving conflicts in the evidence, the finder of fact clearly
lost its way and created such a manifest miscarriage of justice that the decision must be
reversed and a new trial ordered. *Matter of A.D.*, 5[th] Dist. Guernsey No. 19 CA 20, 2019-
Ohio-3671, ¶9. In weighing the evidence there is a presumption in favor of the trial court's
factual findings. *Eastley v. Volkman*, (2012) 132 Ohio St.3d 328.

{¶36}    In *Matter of A.D.*, visitations with the children were not regularly attended,
there was little interaction between parents and children, the parents were to undergo

drug treatment, but did not finish. Throughout the temporary custody of the children, the parents tested positive for controlled substances. A mental health exam was required of the father, which was completed. However, he did not return for services and failed to successfully complete the mental health services.  Finally, the father was to obtain and maintain enough economic resources to support the children. He did not obtain stable employment, taking mostly side jobs and relying on food stamps and disability. This was determined not enough economic resources to support the children. *Matter of A.D.*, 5th Dist. Guernsey No. 19 CA 20, 2019-Ohio-3671, ¶17-23.

{¶37}    These factors led this Court to find, "Sufficient clear and convincing evidence to support the trial court's decision to grant Appellee permanent custody of the children and [does] not find any manifest miscarriage of justice." *Id.* at ¶32.

**Permanent Custody**

{¶38}    This Court set forth a trial court's analysis of a permanent custody motion in *In the Matters of: A.R., B.R., W.R.,* 5th Dist. Stark Nos. 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389. When deciding a motion for permanent custody a trial court must follow guidelines provided in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency with temporary custody of the child or has placed the child in long-term foster care.

{¶39}    R.C.2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency,

and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and no relatives of the child are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children's services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶40}    Clear and convincing evidence "will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *Id.*

{¶41}    The best interest of the child is determined at a permanent custody hearing under R.C. 2151.414(D). Under R.C. 2151.414(D) a trial court must consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody.

{¶42}    Therefore, R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial

court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶43}    In the case before this Court, the children are not abandoned or orphaned so the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exists with respect to each of the child's parents.

{¶44}    R.C. 2151.414(E)(1) states:

Following the placement of the child outside the child's home notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially cause the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

**Analysis**

{¶45}    As evidenced in our statement of facts above, we find the State presented sufficient competent, credible evidence to demonstrate D.T. and H.T. cannot or should not be placed with Appellant or D.T.'s father, and cannot or should not be placed with Maternal Grandmother. Appellant and Maternal Grandmother failed to remedy the problems that initially caused the removal of D.T. and H.T.

{¶46}    D.T.'s father is not actively participating in D.T.'s life. Appellant did not complete her case plan, left her treatment for substance abuse before completion, only visited D.T. twice in the past year, did not obtain stable housing, and continued her methamphetamine use.

{¶47}    H.T.'s father is unknown.  Appellant put minimal effort into her case plan. She did not finish her treatment for substance abuse. She continued to use methamphetamine. She failed to obtain stable housing, and showed up for twenty-two of forty-six visits with H.T. At every visit she tested positive for methamphetamine.

{¶48}    Maternal Grandmother testified the house has been updated with all meaningful problems remedied. However, the clinical therapist and guardian ad litem testified that D.T.'s medical and emotional needs are unlikely to be met at Maternal Grandmother's house.  Both D.T. and H.T. have bonded significantly with their foster families and those needs are being met.

{¶49}    Based on the forgoing, the trial court's findings that parents failed to remedy the conditions that existed at the time of H.T. and D.T.'s removals, that they should not be placed with either parent nor Maternal Grandmother is not against the manifest weight of the evidence, and are supported by sufficient evidence. We further find the trial court's

finding that D.T. and H.T.'s best interests were served by a grant of permanent custody to the Agency is not against the manifest weight of the evidence and is supported by sufficient evidence.

{¶50} Appellant's First Assignment of Error is overruled.

**II.**

{¶51} In her Second Assignment of Error, Appellant argues the trial court erred in allowing the motion for permanent custody to proceed or granting the motion due to a lack of reasonable efforts. We disagree.

{¶52} Appellant also argues that because the Agency did not review Maternal Grandmother's updates at a time chosen by Maternal Grandmother, this shows a lack of reasonable efforts on the Agency's part.

{¶53} R.C. 2151.419 requires the Agency which removed the child from the home must have made reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the home, or make it possible for the child to return home safely. The Agency has the burden of proof to demonstrate it has made reasonable efforts. However, R.C. 2151.419 is generally not applicable to permanent custody proceedings. *In re C.F.*, (2007) 113 Ohio St.3d 73, 81. If the agency has not already proven reasonable efforts, it must do so at the hearing on a motion for permanent custody." *Id.* However, the specific requirement to make reasonable efforts does not apply in a motion for permanent custody. *Id.*

{¶54} The trial court must examine the reasonable case planning and diligent efforts made by the Agency to determine whether the children could not or should not be placed with a parent within a reasonable time.

{¶55}     In *In re F.C.*, this Court found the implementation of a comprehensive reunification plan to assist Mother in remedying problems, assistance with implementing that plan, and Mother's failure to successfully complete the plan showed the Department had made all reasonable, diligent efforts. *In re F.C.*, 5th Dist. Tuscarawas No. 09AP010004, 2009-Ohio-2402.

{¶56}     In the case before us, the Agency similarly implemented a case plan to assist Appellant in remedying the problems which caused the children's removal. The case plan included Appellant receiving treatment for substance abuse, obtain employment, maintain an appropriate residence for children, and complete a parenting course. In addition to the case plan, the Agency: provided gas vouchers, provided other financial assistance such as payment of utility bills, assigned a family aide to assist Appellant with visitation, and provided time and place of in-person and telephone visitation with D.T. and H.T.

{¶57}     Though Appellant initially made efforts to follow the case plan, she eventually relapsed, testing positive for amphetamines and methamphetamines during all three drug screens she took during October of 2019. She did not maintain stable employment. At the onset she did obtain and keep a stable residence, with the Agency helping by locating the housing and paying utility bills; however by the time of the final hearing she had regressed back into homelessness. Due to her increasing drug abuse, inconsistent visitation with H.T., minimal contact with D.T., and lack of stable employment or housing, the trial court has found Appellant was unable to care for any child.

{¶58}    Although the trial court was not required to make a reasonable effort determination, based upon our review of the record we find substantial evidence the Agency used reasonable efforts to reunify the family.

{¶59}    Appellant's Second Assignment of Error is overruled.

### III.

{¶60}    In her Third Assignment of Error, Appellant argues the trial court failed to require a written report of the guardian ad litem as required by R.C. §2151.414(C) prior to or at the time of the hearing on permanent custody. We disagree.

{¶61}    R.C. 2151.414(C) reads in pertinent part as follows: "A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section…but shall not be submitted under oath.

{¶62}    Failure to object to a procedural irregularity under R.C. 2151.414(C) is a waiver of error. *In re Shumate,* 5th Dist. Muskingum No CT2002-0051, 2003-Ohio-2509. This waiver forfeits all but plain error. *In re H.W.,* 5th Dist. Tuscarawas No. 2016 AP 100050, 2007-Ohio-7391. Plain error in a civil proceeding is present only where error to which no objection was made at the trial court seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson*, (1997) 79 Ohio St.3d 116.

{¶63}    In *Shumate*, the guardian ad litem also did not submit a report, and the trial judge expressed his intention to take the matter under advisement pending receipt of the report. *Shumate* at ¶21. So counsel in *Shumate* was unable to cross-examine the guardian ad litem based upon the written report.

{¶64}     Similarly, in the case before this Court, even though no written report was provided by the guardian ad litem, she was present at the hearing and did testify providing counsel adequate opportunity to cross-examine her on the basis for her opinion.

{¶65}     The evidence presented by the Agency was sufficient to support a grant of permanent custody of both D.T. and H.T. to the Agency as discussed in the First Assignment of Error. As such the guardian ad litem's failure to file a written report does not rise to the level of plain error.

{¶66}     Appellant's Third Assignment of Error is overruled.

**IV.**

{¶67}     In her Fourth Assignment of Error, Appellant argues the trial court abused its discretion by not considering the wishes of the child as required by §2151.414(D)(1)(b).

{¶68}     R.C. 2151.414(D)(2) requires the trial court to consider the wishes of the child as it determines the child's best interests. These wishes may be expressed directly by the child or through the child's guardian ad litem. R.C. 2151.414.

{¶69}     When the children could not verbalize their wishes and desires, the guardian ad litem can provide insight. *In re Sanders Children*, 5th Dist. Tuscarawas No. 2004 AP 08 0057, 2004-Ohio-5878, ¶ 67. In *Sanders*, the children were too young to verbalize their wishes and desires, so the guardian ad litem spoke to the children's comfort level with their parents in a supervised sitting. *Id.*

{¶70}     In this case, the trial court stated it considered the factors enumerated in R.C. 2151.414(D)(1), which is inclusive of the wishes of the children.  Further, the

guardian ad litem told the court she was unable to ascertain D.T.'s wishes as you cannot converse with D.T. He just avoids it. As D.T.'s wishes could not be ascertained as adverse to the guardian ad litem, no counselor needed to be appointed, and the trial court did consider the wishes of D.T. We find the trial court did consider the wishes of the child under R.C. 2151.414(D)(1) and did not abuse its discretion in granting permanent custody to the Agency.

{¶71}    For the foregoing reasons, the judgment of the Court of Common Pleas of Knox County, Ohio, is hereby affirmed.

By: Wise, John, J.

Hoffman, J., and

Wise, Earle, J., concur.


JWW/b