[Cite as *In re M.G.*, 2023-Ohio-695.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| M.G. (D.O.B. 12/20/07) | : | Hon. Patricia A. Delaney, J. |
| J.G.  (D.O.B. 09/21/11) | : |  |
| M.G. (D.O.B. 06/27/13) | : |  |
|  | : | Case No.      2022CA00112 |
|  | : | 2022CA00113 |
|  | : | 2022CA00114 |
|  | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
Common Pleas, Family Court Division,
Case Nos. 2020JCV00724,2020JCV00725
& 2020JCV00726

JUDGMENT:                              Affirmed

DATE OF JUDGMENT ENTRY:     March 7, 2023

APPEARANCES:

For-Appellant-Father                    For-Appellee

PAUL GRANT                              JAMES B. PHILLIPS
209 S. Main Street, 8th Fl.             402 2nd Street S.E.
Akron, OH 44038                         Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant-Father appeals the September 9, 2022 judgment entry of the Stark County Court of Common Pleas, Family Court Division, terminating his parental rights and granting permanent custody of M.G.(1), J.G., and M.G.(2) to the Stark County Department of Job and Family Services ("SCDJFS").

*Facts & Procedural History*

{¶2} J.G. is the father ("Father") of M.G.(1), who was born on December 20, 2007, J.G., who was born on September 21, 2011, and M.G.(2), who was born on June 27, 2013. B.G. is the mother ("Mother") of the children.

{¶3} On July 20, 2020, SCDJFS filed a complaint for dependency and/or neglect with regards to M.G.(1), J.G., and M.G.(2). The complaint alleged in part: the agency had previous non-court involvement with the family; in February of 2019, there were concerns that Mother and her friends were using drugs with the children around while Father was at work; Mother admitted using drugs while the children were home and was arrested; the parents agreed to a home safety plan with a grandparent supervising Mother's contact with the children; Mother continued to abuse drugs and tested positive for methamphetamines five times while the safety plan was in place; when Mother refused to follow the safety plan, Father told the agency he would make sure Mother had no unsupervised contact with the children; after the case was closed in 2019, new concerns arose in 2020 that Mother was again using drugs when the children were home and had been left unsupervised with the children; Father agreed to a safety plan with a grandparent supervising Mother's contact with the children, however, Mother would not

let the grandparent into the home; and Mother is not compliant with her criminal case probation and has active warrants for her arrest.

**{¶4}** The trial court held a shelter care hearing on July 21, 2020. Father appeared, and stipulated to probable cause. Mother did not appear. The court granted protective supervision of the children to SCDJFS, but placement remained with Father. A No Contact Order was put in place between Mother and the children.

**{¶5}** A pretrial was held on August 19, 2020, at which the guardian ad litem had concerns about the children's placement and living situation. At a pre-trial held on September 9, 2020, Father was ordered to obtain a quote for a roll-off dumpster because of the condition of the home.

**{¶6}** The trial court held an adjudicatory hearing on October 13, 2020. The agency deleted the allegations of neglect. Mother did not appear for the hearing. Father stipulated to a finding of dependency. In an October 14, 2020 judgment entry, the trial court found M.G.(1), J.G., and M.G.(2) were dependent children. Further, the trial court found SCDJFS made reasonable efforts to prevent the need for placement and/or make it possible for the children to return home. The court continued the placement of the children with Father, under the protective supervision of SCDJFS.

**{¶7}** On October 22, 2020, SCDJFS filed an ex parte motion for temporary custody due to unsafe conditions in the home and the continued violation of the No Contact Order between Mother and the children. The trial court granted the motion, and placed the children into the temporary custody of SCDJFS.

**{¶8}** The trial court held a hearing on October 23, 2020. In an October 26, 2020 judgment entry, the trial court found it was in the best interest of the children for temporary

custody to be granted to SCDJFS. Further, the trial court found SCDJFS made reasonable efforts to prevent the need for placement and/or make it possible for the children to return home. Specifically, the trial court noted the agency attempted services with the children in the home, but the risk was not reduced.

{¶9} The trial court held a pre-trial on June 18, 2021. In a judgment entry issued the same day, the trial court found the agency made reasonable efforts. Also, on June 18, 2021, the agency filed a motion to extend temporary custody. The trial court granted the motion after a hearing. The agency filed a second motion to extend temporary custody on November 30, 2021. The trial court granted the motion, and temporary custody to the agency was extended to July 20, 2022.

{¶10} The trial court held dispositional review hearings on December 14, 2021 and June 14, 2022. In judgment entries issued after each of these hearings, the trial court found SCDJFS made reasonable efforts to finalize the permanency plan in effect.

{¶11} SCDJFS filed a motion for permanent custody of M.G.(1), J.G., and M.G.(2) on June 14, 2022. The motion outlined the issues remaining with Mother and Father, including: Father is unwilling or unable to keep the children safe from Mother; Father failed to have an appropriate plan for supervision of the children while he is at work; and Mother continues to test positive for methamphetamines.

{¶12} On July 21, 2022, Mother and Father filed a joint motion to remove and replace guardian ad litem Christine DiPietro for bias, as she purchased Christmas gifts for the children. The trial court denied the motion after a hearing on August 9, 2022, and found the gifts were de minimis.

{¶13}   The trial court conducted a trial on SCDJFS' motion for permanent custody on August 23, 2022.

{¶14}   Zina Biehl ("Biehl") is the caseworker assigned to the children.   Biehl confirmed the children have been in the temporary custody of SCDJFS since October 23, 2020, which is more than twelve out of the past twenty-two months.   She also detailed the non-court involvement the agency had with the family since 2019 to address Mother's drug use and the home conditions of Mother and Father's home.

{¶15}   Mother's case plan required her to submit to drug screens, and to complete an assessment at CommQuest and follow through with all recommendations.   Mother initially had a no-contact order with the children because she had two warrants out for her arrest.   Biehl met with Mother several times at the beginning of the case and encouraged Mother to turn herself in.   Biehl informed Mother that, in order to start to engage in case plan services, Mother needed to take care of the warrants.   However, Mother told Biehl she was not going to turn herself in.

{¶16}   Mother was arrested on a charge of aggravated possession of drugs in April of 2021, and was sent to prison until October 21, 2021.   Mother was judicially released in October of 2021, and completed sixty days at Deliverance House.   Mother struggled to comply with services and had a conflict with her counselor while she was there.   Mother then went to Sober Living on December 23, 2021.   From January of 2022 through mid-February of 2022, Mother went to Betty's House, a sober living home, but was released due to non-compliance with house rules.   From there, Mother went to the Country Inn hotel until she was able to secure sober living at Coleman House.

{¶17} Biehl reports Mother has not consistently kept appointments with her outpatient mental health treatment providers, but has recently been attending appointments.

{¶18} Prior to April of 2021, Mother was not completing any drug screens. Upon her judicial release from prison, Mother has been on color code to complete random drug screens. In May of 2022, Mother did not show for two screens. At the end of May of 2022 and on June 1, 2022, Mother tested positive for methamphetamines. Mother has consistently tested positive for marijuana, and Mother lasted tested positive for marijuana on August 10, 2022. Biehl testified that after two years, Mother is unable to demonstrate sobriety.

{¶19} Biehl stated that Mother has gone for a period of time in excess of ninety days without seeing the children, from October of 2020 through April of 2022.

{¶20} Biehl does not believe Mother can safely care for the children due to her drug use and mental health. Two years into the case plan, Mother has not maintained sobriety and is only semi-compliant with mental health treatment. Further, Biehl testified Mother's mental health professionals have concerns for Mother's stability and her ability to care for the children.

{¶21} Father's case plan required him to engage in counseling services and address the conditions of the home. Father has maintained stable employment throughout the case. Biehl testified the home still has issues.

{¶22} Father did not start counseling until April of 2021. However, prior to that time, Biehl found Father providers one street away from him that were willing to meet with him on the week-end or in the evening. Since then, Father has consistently attended

appointments. Despite the counseling, Father has not been able to demonstrate he can provide a safe and stable home. Father is not applying the information from counseling to his daily life. Biehl has repeatedly told Father that, due to her drug use, Mother is not in a position to take care of the children, so he has to be able to do it on his own. However, after Father was told he could not leave the children with Mother, he left them with Mother. Biehl testified that Father is still involved with Mother and, at this point, Father cannot protect the children from Mother, or provide a safe and stable home for them.

{¶23} Father works long hours and leaves early in the morning. Father was not able to provide Biehl with a plan as to who would be taking care of the children while he is at work. Father's mother is involved, but is unable to watch the children full-time due to her own medical issues and needs. Father has supervised visits with the children every other week for two hours.

{¶24} Biehl also testified in the best interest portion of the trial. Biehl does not believe Mother has a bond with M.G.(1), and, if there is any bond, the benefit of permanency outweighs any harm of breaking the bond. As to M.G.(2) and J.G., Biehl testified there was a bond with Mother at the beginning of the case; however, that changed due to Mother's continued drug use and inability to recognize what she has done. The benefit of permanency outweighs any breaking of a bond Mother had with M.G.(2) and J.G.

{¶25} Biehl testified Father's visits have gone fairly well, and there is a bond between him and the children. However, after two years, the goal of permanency outweighs any harm that would come from breaking those bonds. The children have been in the same foster placement since October of 2020. The foster parent is bonded

to each child.  Each child has told Biehl they want permanency and that Mother and Father are unable to take care of them.

{¶26}  Biehl testified she believes is in the children's best interest for permanent custody to be granted to SCDJFS.  Mother poses a risk to the children, has not completed her case plan, and is unable to maintain her sobriety.  Mother has not reduced the risk she posed at the beginning of the case in any significant way.  As to Father, Biehl stated his risk to the children remains the same as it did at the beginning of the case, as he is not able to demonstrate his ability to protect and care for his children independently.

{¶27}  Gail Mager ("Mager") is a licensed professional clinical counselor at Lighthouse Family Center.  She has been Father's counselor since April of 2021.  Father has attended his counseling sessions consistently.  Mager has been working with Father to set up boundaries and space between himself and Mother, and separating himself from Mother for the good of the children.  Mager would be concerned if Father was seeing Mother weekly, because Mager does not believe it is good for Father to remain engaged to a level where he feels like he is helping her.  When asked about Father's progress in counseling, Mager described it as "flat," with very little progress because things were not changing, and they were discussing the same issues over and over again.  They would discuss options, and Father would never tell her anything specific about how he will care for the children full-time.

{¶28}  Joseph Fisher ("Fisher") is a licensed professional counselor at Child and Adolescent Behavioral Health.  Fisher is M.G.(1) and J.G.'s counselor.  M.G.(1) is worried about the possibility of returning to his parents' home because, prior to their removal from the home, M.G.(1) was taking care of his younger siblings.  J.G. also expresses anxiety

about returning to the parents' home.   The children are both comfortable and well-adjusted in their foster home, and they both feel safe in their current placement.

{¶29}  Father works full-time, approximately 40-70 hours per week.  Father feels like counseling has been beneficial for him.  Father is aware there is a No-Contact Order between Mother and the children due to her substance abuse.  Father admits he withdrew his divorce complaint from Mother, but believes he still can enforce the No-Contact Order between Mother and the children.   Father believes he has established appropriate boundaries with Mother because they are living separately.  Father admitted to having dinner with Mother within the last week prior to the trial.

{¶30}  Mother admitted she did not get a good start on her case plan because of the warrants for her arrest.  Mother was arrested on April 10, 2021.  She completed counseling at Deliverance House when she was judicially released from prison.  She is currently seeing a counselor at CommQuest.

{¶31}  Christine Dipietro is the guardian ad litem ("GAL") for the children.  The GAL admitted she did not review all of the children's counseling records, but stated she based her opinion on talking to the children directly and by talking with Biehl.  The GAL spoke to each child individually, and did not feel the oldest child was influencing the younger ones such that they could not express their own opinions and make their own decisions. The GAL believes it is in the best interest of the children for permanent custody to be granted to SCDJFS.

{¶32}  On September 1, 2022, the trial court held an in-camera interview with M.G.(1) and J.G.  J.G. reported that, when the children were under the protective supervision of SCDJFS, Father said not to tell anyone that Mother was coming to the

marital residence.  J.G. does not trust his parents to do what needs to be done.  When living with his parents, J.G. and his siblings had to fix their own meals and get themselves to school.  Though Father said he was cleaning up the house, J.G. stated the home conditions kept getting worse and worse.  J.G. loves Mother and Father, but does not want to go home with them because "bad things would happen."  J.G. got mad when he saw Father and Mother sitting together at M.G.(1)'s graduation.  M.G.(1) stated that, when he lived with Mother and Father, he was the parent, as he would cook, clean, and do laundry.  M.G.(1) does not believe Father will change, as he has broken many promises.

{¶33}  The trial court issued a detailed judgment entry containing findings of fact and conclusions of law for each child on September 9, 2022, granting permanent custody of the children to SCDJFS, and terminating Mother and Father's parental rights.  The trial court went through the testimony in the case in detail.  The trial court found as follows with regard to each child:  notwithstanding reasonable case planning and diligent efforts by the agency, Mother and Father have failed to remedy the conditions that caused the children to be placed; the children have been abandoned by Mother due to her lack of contact with them for a period greater than ninety (90) days; each of the children has been in the temporary custody of the agency for more than twelve months of a consecutive twenty-two month period; the children cannot be placed with either parent at this time or within a reasonable period of time; and it is in the best interest of the children that permanent custody be granted to SCDJFS.

{¶34} In the permanency portion of the judgment entry, the trial court found: Mother has not demonstrated an ability to maintain sobriety; from October 2020 to April 2022, Mother had no contact with the children; even after two years, the home's

conditions have not improved to a point where it is suitable for the children to return; Father and Mother have resumed their relationship; Father's inaction causes the children to remain at risk; Father has not been able to come up with a plan for the children to be cared for while he is at work; and Father's progress in counseling is "flat."

**{¶35}** The trial court stated it considered the best interest factors, and found it is in the children's best interest to grant permanent custody to SCDJFS. Specifically, the trial court found: there is no bond between Mother and the children; there is a bond between Father and the children, but the benefit of permanency outweighs the harm in severing the bond; the children are happy in their foster home; and both older children expressed a desire to stay at their foster home and not return to either Mother or Father.

**{¶36}** Father appeals the September 9, 2022 judgment entry of the Stark County Court of Common Pleas, Family Court Division, and assigns the following as error:

**{¶37}** "I. THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY OF THE CHILDREN TO STARK COUNTY JOB AND FAMILY SERVICES SHOULD BE REVERSED BECAUSE THE RECORD DOES NOT SUPPORT THE TRIAL COURT'S FINDING THAT THE CHILDREN COULD NOT BE PLACED WITH HIS FATHER WITHIN A REASONABLE TIME.

**{¶38}** "II. THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY OF THE CHILDREN TO STARK COUNTY JOB AND FAMILY SERVICES SHOULD BE REVERSED BECAUSE THE AGENCY FAILED TO USE REASONABLE EFFORTS TO REUNIFY THE CHILDREN.

**{¶39}** "III. THE LOWER COURT PLAINLY ERRED BY ADMITTING THE TESTIMONY OF THE GAL."

*Permanent Custody*

{¶40} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶41} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477. If some competent and credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶42} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶43} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court

schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency.

{¶44} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶45} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

I.

{¶46} In his first assignment of error, Father makes three separate arguments. First, he contends the elements of R.C. 2151.414(B)(1)(a) and (E) were not met because the finding that the children could not or should not be placed with Father within a reasonable time was not proven by clear and convincing evidence.

**{¶47}** We first note that the trial court determined, pursuant to R.C. 2151.414(B)(1)(d), the children have been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. Biehl testified the children were placed into the temporary custody of SCDJFS on October 23, 2020, and were continuously in the temporary custody of SCDJFS until August 23, 2022, the date of the trial. Thus, M.G.(1), J.G., and M.G.(2) have been in the custody of the agency for more than twelve months out of the last twenty-two months.

**{¶48}** As findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

**{¶49}** Because Father has not challenged the twelve of twenty-two-month finding, we would not need to address the merits of Father's claim with regards to the trial court's determination that the children could not or should not be placed with Father within a reasonable time. However, even if we consider Father's argument, we find the trial court did not commit error in determining the children cannot be placed with Father at this time or within a reasonable period of time. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶50}  A review of the record supports the trial court's conclusion that the children cannot be placed with Father within a reasonable time.  Biehl testified Father's home still has issues, and, even after almost two years, the home is not a suitable place for the children to live.  Despite his attendance at counseling, Father has not demonstrated he can provide a safe and stable home for the children, as he is not applying what he learns in counseling to his daily life.

{¶51}  Mager stated Father's progress in counseling is "flat," as they are discussing the same things over and over, and Father is not changing or providing Mager with concrete plans for taking care of the children.  Despite repeatedly being told that Mother cannot parent, Father has continued his relationship with her.  Father is unable to parent on his own.  Father cannot protect the children from Mother or provide a safe and stable home for the children.  Father was unable to provide either Biehl or Mager with a plan for who will take care of the children after school and during the summer.

{¶52}  Second, Father argues SCDJFS did not make "reasonable case planning and diligent" efforts to assist Father in remedying the problems existing at beginning of the case.  Father has also assigned this as a separate assignment of error.  As detailed in our analysis of Father's second assignment of error, we find this argument to be not well-taken.

{¶53}  Third, Father argues the trial court's determination that the best interest of the children would be served by the granting of permanent custody to SCDJFS was against the manifest weight and sufficiency of the evidence.  Father cites to the fact that he completed his case plan and the testimony about his bond with the children.

**{¶54}** We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of the child should be accorded the utmost respect, given the nature of the proceeding and the impact that court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1799973 (Nov. 13, 2000), citing *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

**{¶55}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶56}** The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532. *In re Schafer* made it clear that a trial court's statutory duty, when determining whether it is in the best interest of a child to grant permanent custody to an agency, does not include finding by clear and convincing evidence that no suitable relative was available for placement. *Id.* R.C. 2151.414 "requires the court to find the best option

for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Id.*

**{¶57}** The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *In re Awkal*, 85 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist. 1994).

**{¶58}** We find the trial court did not commit error in finding that granting permanent custody to SCDJFS is in the best interest of the children.

**{¶59}** Biehl testified that, after two years, the benefit of permanency outweighs any bond the children have with Father. Biehl believes it is in the best interest of the children to grant permanent custody to SCDJFS because the risks to the children are the same as they were at the beginning of the case, as Father is not able to demonstrate the ability to protect his children and care for the children independently. Fisher testified that M.G.(1) and J.G. have anxiety about possibly returning home, and that they are well-adjusted and feel safe in their current placement. M.G.(1) and J.G. expressed to the trial court their desire to stay in their current placement and be adopted, and believe "bad things" will happen if they return home to Father. The GAL testified it is in the best interest of the children for the agency to be granted permanent custody.

**{¶60}** Father contends he has completed all his case plan requirements. However, the successful completion of a case plan is not dispositive on the issue of reunification. *In re W.A.J.*, 8th Dist. Cuyahoga No. 99813, 2014-Ohio-604. While it may

be in Father's best interest to complete the case plan, this is only one factor for a trial court to consider what is in the best interest of the child. *In the Matter of D.P. and G.P.*, 5th Dist. Stark No. 2010CA00348, 2011-Ohio-1907.

**{¶61}** Where a parent has participated in his or her case plan and completed most or all of the plan requirements, a trial court may still properly determine that such parent has not substantially remedied the problems leading to agency involvement. *In the Matter of A.L. and J.L.*, 5th Dist. Guernsey No. 11 CA 23, 2012-Ohio-481. In this case, while Father has substantially completed his case plan, Biehl and the GAL described how Father failed to alleviate the risks present at the time of removal and that the same concerns present at the start of the case still continue today.

**{¶62}** We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to SCDJFS is in the best interest of the child is supported by competent and credible evidence.

**{¶63}** Father's first assignment of error is overruled.

II.

**{¶64}** In his second assignment of error, Father argues SCDJFS did not make reasonable efforts to assist him in remedying the problems leading to the removal of the children; thus, the motion for permanent custody should be denied.

**{¶65}** First, the Ohio Supreme Court has held the trial court is not obligated by R.C. 2151.419 to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing unless the agency has not established that reasonable efforts have been made prior to that hearing. *In re C.F.*, 113

Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; see also R.C. 2151.419. The trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state." *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816; *In the Matter of L.J.*, 5th Dist. Licking No. 2019 CA 0079, 2019-Ohio-5231.

**{¶66}** In this case, the record reflects the trial court made reasonable-efforts findings at various points throughout the case, as demonstrated in judgment entries after the hearings held on October 23, 2020, June 18, 2021, December 14, 2021, and June 14, 2022. Consequently, the agency did not need to prove at the permanent custody hearing that it made reasonable reunification efforts. *Id.*

**{¶67}** In its September 9, 2022 judgment entry, the trial court found SCDJFS made reasonable efforts to reunify the family. Father contends the efforts of SCDJFS were not reasonable because they did not schedule enough joint counseling sessions, and the agency inappropriately let the children decide where they wanted to live.

**{¶68}** We find there is competent and credible evidence to confirm that SCDJFS made reasonable efforts to assist Father in eliminating the need for the continued removal of the children. Father was provided with a case plan with services to reduce the risk he posed to the children. Biehl specifically stated she took Father's long work hours into consideration when developing his case plan. The agency provided Father with case management services, visitation between the children and Father, and counseling for Father and the children.

**{¶69}** The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case. *In the Matter of J.H.*, 5th Dist. Guernsey No. 19CA000025, 2019-Ohio-5184. We find there is competent and credible evidence to support the trial court's determination that SCDJFS' efforts were reasonable and diligent under the circumstances of the case.

**{¶70}** Father's second assignment of error is overruled.

III.

**{¶71}** In his third assignment of error, Father contends the trial court plainly committed error by admitting the testimony of the GAL. Father argues the GAL did not comply with Superintendence Rule 48 and R.C. 2151.281(D) and (I) because she did not review all of the counseling records in the case, failed to observe Father with the children, and relied too heavily on the information she received from Biehl in making her determination that it is in the best interest of the children for permanent custody to be granted to SCDJFS.

**{¶72}** Neither parent objected to the testimony of the GAL.

**{¶73}** R.C. 2151.281 governs a GAL's duties and provides the GAL "shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency * * *." There is no specific requirement contained in R.C. 2151.281 that a GAL must observe the parents with the children, or review counseling records. R.C. 2151.281 instructs the Ohio Supreme Court to adopt rules regarding the duties a GAL should perform when protecting

the interest of a child.  The Ohio Supreme Court has done so in Superintendence Rule 48.

{¶74}  Rule 48(D) of the Ohio Rules of Superintendence is a lengthy statement of the basic responsibilities of a GAL serving in an Ohio court, which are to be performed "unless impracticable or inadvisable to do so."  These responsibilities include representing the best interest of the child for whom the GAL is appointed, maintaining independence, objectivity, and fairness, acting as an officer of the court, participating in pertinent hearings, resolving any conflicts of interest that may arise, meeting qualifications and training requirements, making reasonable efforts to become informed about the case, contacting the parties, maintaining confidentiality, and numerous other considerations.

{¶75}  We have recognized that Superintendence Rule 48 is a general guideline that does not have the force of statutory law, and therefore an appellant does not have any substantive right to enforce it.  *In the Matter of D.S.*, 5th Dist. Fairfield No. 15 CA 30, 2016-Ohio-79; *Rice v. Rice*, 5th Dist. Delaware No. 10 CAF 11 0091, 2011-Ohio-3099.  In general, the Ohio Rules of Superintendence are "purely internal housekeeping rules which do not create substantive rights in individuals or procedural law."  *Elson v. Plokhooy*, 3rd Dist. Shelby No. 17-10-24, 2011-Ohio-3009.

{¶76}  Further, most importantly for purposes of due process, the GAL was present at the evidentiary hearing and testified.  *In re: K.A.*, 5th Dist. Fairfield No. 2021 CA 00004, 2021-Ohio-1773.  Father appeared with counsel and had the opportunity to cross-examine the GAL.

{¶77}  Additionally, the trial court, as the trier of fact, is permitted to assign weight to the GAL's testimony and recommendation and to consider it in the context of all the

evidence before the court.  *Id.*  The decision of whether to consider a GAL report, even when the guardian did not fully comply with Superintendence Rule 48, is within a trial court's discretion.  *Id.*, citing *Corey v. Corey*, 2nd Dist. Greene No. 2013-CA-73, 2014-Ohio-3258.

**{¶78}** Father argues the GAL's actions in the instant case were deficient and compromised her testimony, to the extent that the trial court erred in permitting the GAL to testify.  Father relies upon *In re A.S.*, 10th Dist. Franklin No. 21AP-249, 2022-Ohio-1861, in support of his argument.  However, we find that case to be distinguishable.

**{¶79}** First, as in *A.S.*, Father in this case failed to object to admission of the GAL's testimony and report, and we therefore review this argument for plain error.  *Id,* citing *Matters of D.T.*, 5th Dist. Knox No. 20 CA 000004, 2020-Ohio-3808.

**{¶80}** In *A.S.*, the Tenth District held that a GAL failed to faithfully discharge his duties because:  his written report contained errors of fact; he met with the children only once in three years; he never observed a visitation with the parents and children; he didn't ascertain the children's wishes; and he failed to contact significant individuals in the case including the parties and the foster parents.  *Id.*  In short, the GAL failed to comply with virtually every tenant of R.C. 2151.281.  The Court noted, however, that *A.S.* is the rare case in which the GAL so completely failed to discharge his responsibilities that he did not act in the best interests of the children and the trial court committed plain error in accepting his reports and testimony.  *Id.*

**{¶81}** *A.S.* is distinguishable from the instant case.

**{¶82}** We find no evidence the GAL was deficient in the performance of her duties comparable to the extent of the GAL in *A.S.*  While the GAL admitted that she missed

writing down some of the exact dates of when things occurred in her report, her testimony was clear that she spoke with each child individually and frequently, both in-person and over the telephone to ask how things were going and if they had changed their opinion about their wishes. The GAL further stated she did speak with Father, visited his home, spoke with his counselor, and felt like she gave him a fair chance. Further, while she did not review all of the counseling records in detail, the GAL contacted several of parents' service providers herself via telephone. The GAL attended family team meetings and had regular contact with the ongoing caseworker.

{¶83} Upon review of the record, we find the trial court did not abuse its discretion in its treatment of the testimony and report of the GAL. Superintendence Rule 48 does not create substantive rights. *In re: K.A.*, 5th Dist. Fairfield No. 2021 CA 00004, 2021-Ohio-1773. We find no reversible error, particularly where the trial court has the discretion to follow or reject any recommendation of a GAL. *Id.*, citing *Wine v. Wine*, 5th Dist. Delaware No. 04 CA F 10, 2005-Ohio-975. Father's third assignment of error is overruled.

{¶84} Based on the foregoing, Father's assignments of error are overruled.

{¶85} The September 9, 2022 judgment entry of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur