**[Cite as *In re R.M.*, 2025-Ohio-1420.]**

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| R.M. | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| | : | |
| | : | Case No. 2024 AP 12 0037 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Tuscarawas
Common Pleas Court, Juvenile
Division, Case No. 23JN00176

JUDGMENT:       Affirmed

DATE OF JUDGMENT:       April 18, 2025

APPEARANCES:

For Appellant Father

JUDITH M. KOWALSKI
333 Babbitt Road, Suite 323
Euclid, OH 44123


DONOVAN HILL
Guardian ad litem
122 Market Avenue North
DeWalt Building, Suite 101
Canton, OH 44702

For Appellee

LISA VITALE ARNOLD
Tuscarawas Department of Job and
  Family Services
389 16th Street, N.W.
New Philadelphia, OH 44663

*Montgomery, J.*

**STATEMENT OF THE FACTS AND THE CASE**

**{¶1}**   R.P., the father of the minor child (Appellant) is appealing the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, awarding Tuscarawas County Department of Job and Family Services (Appellee) permanent custody of R.M.

**{¶2}**   R.M. was born on January 25, 2022 to K.M. (Mother) and Appellant. R.M. is diagnosed with Chung Jansen Syndrome which is a rare genetic condition. Complications from the syndrome include growth and developmental delay, intellectual and learning disability, failure to thrive, near sightedness, seizures, constipation and obesity.

**{¶3}**   At the time of R.M.'s removal from Mother's home, Mother was living with her boyfriend and her mother ("Grandmother") and Grandmother's husband. The home they lived in was in deplorable condition. Mother and her boyfriend were using methamphetamines in the home. The minor was suffering from severe failure to thrive.

**{¶4}**   Appellee received emergency custody of R.M. after a shelter care hearing and filed a Complaint alleging dependency and neglect on June 20, 2023. R.M. was found to be dependent and neglected and Appellee was granted temporary custody on August 25, 2023. Several review hearings were held and R.M. remained in the temporary custody of Appellee. Mother filed a Motion for Change of Legal Custody on May 10, 2024. Appellee filed a Motion to Modify Prior Disposition to Permanent Custody for R.M. on May 15, 2024. The trial court held a hearing on both motions on November 7, 2024, and issued its decision on November 14, 2024.

**{¶5}** A case plan was filed with the trial court on July 11, 2023. Concerns listed on the case plan include child's severe failure to thrive, poor home conditions, dirty home, animal neglect, drug and mental health concerns and Mother's intellectual delays. *Judgment Entry*, p. 4. The case plan states that Mother "be able to demonstrate that she can care for her child's special needs". That "she learns, understand and articulates normal child behaviors expected from child and non-harmful discipline techniques". And that she "apply this knowledge and understanding to her care of child on a consistent basis". *Family Case Plan*, p. 1. The case plan also ordered Mother to complete a psychological exam with Dr. Aimee Thomas. *Id.*

**{¶6}** Appellant was in and out of jail during the pendency of this case. Appellee informed Appellant of actions he needed to take if he wanted to participate in the Family Case Plan. *Trial Transcript*, p. 165. Appellant informed Appellee's caseworker that he did not wish to participate in the case plan services with the Appellee. *Id.* Appellant wants his child to be placed into the custody of maternal grandmother. *Id.*, p. 265.

**{¶7}** Dr. Aimee Thomas, an expert in the field of psychology, completed an evaluation of Mother and found that Mother has a full-scale IQ of 40. *Trial Transcript*, p. 93. Dr. Thomas stated that Mother is "functioning at a level of a five and six-year-old in terms of verbal capacity and, as well as non-verbal skills". *Id.* Dr. Thomas opined that, "Individuals functioning within this level require a lot of support towards raising children and a lot of support in order to be safe in the community and to live independent. They would require assistance and may not be able to live completely independently." *Id.* Dr. Thomas attempted to administer several other tests in which Mother could not complete because of her intellect. *Id.*

**{¶8}** Dr. Thomas also evaluated Grandmother and found her to have a verbal IQ of 63 and non-verbal IQ of 48. *Trial Transcript*, p.106. Dr. Thomas found that, "this indicates she's functioning at the level of a nine-year-old in terms of verbal skills, and at the level of a four-year-old in terms of nonverbal skills". *Id.* Dr. Thomas explained that Grandmother is significantly delayed in her ability to "perceive problematic situations, taking information from one situation and applying it to another situation". *Id.*

**{¶9}** Mother participated in supervised visits with R.M. Mother attended visits regularly. During these visits, Mother brought diapers that were too small for R.M. more than five times. *Trial Transcript*, p. 168. Mother brought candy and snacks to visits even though R.M. could not eat those foods due to his medical issues. *Id.* The guardian ad litem observed concerning behaviors in a visit with Mother and R.M. in that Mother was not aware of things that could pose a physical risk to R.M. *Id.*, p. 248. The guardian ad litem observed R.M. climb and wobble back and forth on a chair. Mother did not intervene until the supervisor brought it to her attention. *Id.* Based on the observations and reports of Mother's supervised visits and the report of Dr. Thomas, the guardian ad litem opined "it was not possible for Mother to independently parent child, absent placing child in harm's way". *Id*, p.260.

**{¶10}** The trial court found that, "Based upon the facts presented and the recommendation of the guardian ad litem, the Court finds that R.M. cannot and should not be placed with either parent within a reasonable time. The evidence supports a finding that despite diligent, reasonable efforts and planning by the Tuscarawas County Department of Job and Family Services to remedy the problems which caused removal of the child, said parents have failed continually and repeatedly to substantially remedy

the conditions causing removal." *Judgment Entry*, p. 7. The trial court ordered R.M. be placed in the permanent custody of Appellee pursuant to R.C. 2151.353(A)(4). *Id.*

{¶11} Appellant filed a timely appeal to the trial court's decision and asserts the following assignments of error:

{¶12} "I. THE TUSCARAWAS COUNTY JUVENILE COURT ERRED IN FINDING THAT CLEAR AND CONVINCING EVIDENCE SUPPORTED GRANTING PERMANENT CUSTODY OF THE SUBJECT CHILD TO THE TUSCARAWAS COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES.

{¶13} II. THE AWARD OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶14} III. THE TUSCARAWAS COUNTY JUVENILE COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE CHILD, WHEN THE GUARDIAN AD LITEM ADMITTED THAT HE HAD NEVER DONE A HOME VISIT WITH THE MOTHER OR GRANDMOTHER AT THEIR RESIDENCE, IN VIOLATION OF OHIO SUP.R. 48.

{¶15} IV. THE JUVENILE COURT DID NOT MAKE SUFFICIENT INDICATION ON THE RECORD THAT IT CONSIDERED ALL OF THE FACTORS IN R.C. 2151.414.

{¶16} V. THE JUVENILE COURT ERRED IN GRANTING PERMANENT CUSTODY WHEN THE TUSCARAWAS COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES DID NOT ENGAGE IN DILIGENT CASE PLAN NOR MAKE REASONABLE EFFORTS TO REUNIFY THE FAMILY.

## ANALYSIS

{¶17} In his first assignment of error, Appellant claims the trial court erred when it found clear and convincing evidence that R.M. should be placed into the permanent custody of Appellee.

{¶18} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to

sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶19} R.C. 2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a)     The child is not abandoned or orphaned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b)     The child is abandoned.

(c)     The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d)     The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period.  . . .

(e)     The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶20} R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent.  Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1)     Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties;

(2)     Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3)     The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; ***

(16) Any other factor the court considers relevant.

{¶21} In determining the best interest of R.M., R.C.2151.414(D)(1) sets forth factors to be considered but not limited to:

(a)     The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)     The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)     The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, or the child has been in the

temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(l) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)     The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)     Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶22} Thus, "R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(l)(a) through (d) is present before proceeding to a determination regarding the best interest of the child." *In re Hickmann,* 2007-Ohio-6104 at ¶ 17.

{¶23} The role of an appellate court is to determine whether there is relevant competent and credible evidence upon which the fact finder could base its judgment. The judgment of the trial court will not be reversed so long as the verdict and judgment is within the perimeters of the conflicting evidence. *Cross Truck v. Jeffries* (Feb. 10, 1982) Stark App. No CA5758, ¶¶ 2-3.

{¶24} During the hearing, the trial court heard testimony from Dr. Jirat Chenbhanich (genetic specialist), Amy Burrier (employee with Ohio Guidestone), Kristina Miller (foster parent of the minor), Trudy Lewis (Kinnect to Family Specialist), Skyler

Smolak (caseworker with Appellee) Aimee Thomas, Ph.D. (evaluator), Attorney Donavan Hill (guardian ad litem), Grandmother, Mother and Appellant.

**{¶25}** Dr. Jirat Chenbhanich testified as to the special needs of R.M. stated that the minor "needs a significant amount of care based on the medical issues that he has. He has some heart differences, some kidney differences. His growth and development, there are some concerns. Feeding issues. He is seeing more than five specialists, so he needs significant amount of care by both the primary care provider, who will be the centralized person, and also all of the specialists." *Trial Transcript*, p. 22.

**{¶26}** After assessing both Mother and Grandmother, Dr. Aimee Thomas stated that, "Even if R.M. didn't have these special needs, I would be of the opinion, based on their intellectual capacity and the history, that they would not be able to independently raise this child." *Trial Transcript*, p. 129.

**{¶27}** Appellee caseworker Skyler Smolak relayed to the court that, "Mother required help from the visitation aide to provide adequate care during the visit." *Trial Transcript*, pp. 167-168. Mr. Smolak went on to state, "Mother brought candy and other snacks to visits for R.M., even though he cannot eat those items due to his medical issues." *Id.*, p. 168. Mr. Smolak also told the court that Mother "brought diapers that were too small for R.M. to visits more than five times", *Id.*, p. 168.

**{¶28}** The guardian ad litem testified as to his concerns regarding placement of R.M. with Mother and/or Grandmother. Mr. Hill testified that he had observed "concerning behaviors in visits with Mother and the minor in that Mother was not aware of things that could pose a physical risk to the minor. *Trial Transcript*, p. 248. He informed the trial court

that he had witnessed situations where the child was placing himself in a dangerous situation and Mother did not intervene. *Id.*

**{¶29}** Mother participated in the Family Case Plan and completed the requirements that were set out for her. However, the concerns which lead to R.M.'s removal were not remedied. Mother and R.M. did not progress past supervised visits and Mother could not show she could care for R.M. Mother was unable to articulate that she understood R.M.'s specific medical needs. When questioned, she simply stated, "He needs a lot of care." *Trial Transcript*, pp. 334-335. When asked to be more specific as to the kind of care R.M. needs, Mother responded, "Love, like love, care (inaudible)." *Id,* p. 335.

**{¶30}** This Court has reviewed the record and finds that the trial court had sufficient evidence before it to decide that there was clear and convincing evidence that R.M. should be placed into the permanent custody of Appellee.

**{¶31}** Appellant further argues that the trial court's decision was against the manifest weight of the evidence.

**{¶32}** On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered". *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). In *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting Black's Law Dictionary (6th Ed. 1990), the Supreme Court of Ohio explained the following:

a. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics but depends on its *effect in inducing belief*." (Emphasis in original.)

b. In weighing the evidence, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman*, 2012-Ohio-2179.

**{¶33}** Appellant argues that the testimony of Mr. Smolak was not credible because Mother had allegedly made allegations of assault against him. Appellant asserts that Mr. Smolak may be biased against Mother because of this allegation. *Appellant Brief*, p. 33. However, there is nothing in the record to show that Mr. Smolak was biased against Mother. Appellant further argues that Dr. Thomas stated that Appellee should be seeking a relative to care for the child so that Mother could maintain contact with R.M. However, Dr. Thomas' statement was a recommendation, not an order. Furthermore, as previously stated, Appellee attempted to find a relative placement for R.M., but its efforts were unsuccessful. Finally, Appellant argues that there may have been a misunderstanding regarding his ability to access the services of Appellee. Upon a review of the trial transcript, this Court finds no evidence that Appellant was confused. Appellant testified at the trial and did not state that he was confused regarding his ability to participate in the

Family Case Plan. Appellant's testimony on direct examination centered on his desire to have R.M. placed with Grandmother. *Trial Transcript*, pp. 264-266.

**{¶34}** Based upon the testimony and evidence presented, the trial court did not lose its way in making the decision to deny Mother's motion and grant Appellee's motion to terminate Mother's parental rights and grant permanent custody of R.M. to Appellee; we do not find any manifest miscarriage of justice.

**{¶35}** In his third assignment of error, Appellant argues that the trial court erred in granting permanent custody to Appellee where the guardian ad litem did not visit the home of Mother and Grandmother at their residence pursuant to Ohio Sup.R.48.

**{¶36}** Appellant states in his brief that, "Ohio appellate courts have indicated that the Rules of Superintendence are general guidelines for the conduct of the courts and do not create substantive rights in individuals or procedural law." *In Re K.G.,* 2010-Ohio-4399. This Court has stated, "Rule 48(D) of the Ohio Rules of Superintendence is a lengthy statement of the basic responsibilities of a GAL serving in an Ohio court, which are to be performed 'unless impracticable or inadvisable to do so'." *In the Matter of M.G.*, 2023-Ohio-695. "These responsibilities include representing the best interest of the child for whom the GAL is appointed, maintaining independence, objectivity, and fairness acting as an officer of the court, participating in pertinent hearings, resolving any conflicts of interest that may arise, meeting qualifications and training requirements, making reasonable efforts to become informed about the case, contacting the parties, maintaining confidentiality, and numerous other considerations." *Id.*

**{¶37}** The guardian ad litem had multiple conversations with Mother, witnessed a visit between Mother and R.M., attended court hearings, reviewed the discovery and

filings in the case and met with R.M. numerous times. Appellant argues that since Mother completed her case plan, the guardian ad litem should have visited Mother's home to determine if it was suitable. Appellant fails to take into consideration that Mother had not progressed past supervised visits with R.M. The guardian ad litem stated, "the status of the home would not have in any way resolved or surmounted the issues raised in Dr. Thomas' report and thus it was not a deciding factor". *Trial Transcript*, p. 256. Had the case progressed past supervised visits between Mother and R.M., the guardian ad litem testified that he would have visited Mother's home. "But in this case, had it gotten to a point where the status of the home was now sort of a live question, then, yes I would have done so." *Id.*, p. 256.

**{¶38}** Appellant argues Sup. R. 48 requires the guardian ad litem to visit the home of the parents as part of his investigation and his failure to do so makes his testimony not credible. This Court does not agree. The guardian ad litem in this case followed the general guidelines as outlined in Sup.R. 48. A visit to the home of Mother is not a requirement. In this case the proposed residence of R.M. was the home of the foster parents. The guardian ad litem visited R.M. in this home numerous times. *Trial Transcript*, p. 246. Therefore, Appellant's third assignment of error is overruled.

**{¶39}** Appellant argues in his fourth assignment of error that the trial court did not make sufficient indication on the record that it considered all of the factors in R.C. 2151.414. We disagree.

**{¶40}** The Ohio Supreme Court held in *In re. A.M.*, 2020-Ohio-5102, that "R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute

requires. Although a reviewing court must be able to discern from the magistrate's or juvenile court's decision and the court's judgment entry that the court satisfied the statutory requirement that it consider the enumerated factors, we may not graft onto the statute a requirement that the court include in its decision a written discussion of or express findings regarding each of the best-interest factors."

{¶41} The Judgment Entry of the trial court made 49 findings of fact that it found to be true by clear and convincing evidence. These findings included, but were not limited to, the R.M.'s medical needs, Appellee's concerns listed on the case plan, Mother and Grandmother's intellectual deficits and cognitive delays, Mother's inability to move past supervised visits with R.M., Appellant's desire to not engage in the case plan, R.M.'s bond with the foster family, and the report of the guardian ad litem.

{¶42} The Judgment Entry states, "Considering all the factors listed in 2151.414, the Court finds that it is in the best interest of R.M. to be placed in the permanent custody of the Tuscarawas County Department of Job and Family Services. The Court further finds the harm caused by severing the bond with parents is outweighed by the benefits of permanency in the child's life." *Id.*, p. 8.

{¶43} The judgment entry of the court clearly states that it considered all the factors in R.C. 2151.414. Upon review of the court's judgment entry, this Court finds that the trial court satisfied the statutory requirement that it consider the enumerated factors. Appellant's fourth assignment of error is overruled.

{¶44} In his final assignment of error, Appellant argues that the trial court erred in granting permanent custody to Appellee because Appellee did not engage in diligent case plan nor make reasonable efforts to reunify the family. We disagree.

**{¶45}** Appellant argues Mr. Smolak did not pursue case plan services for Appellant. This is not true. Appellant was incarcerated at the time R.M. was removed from his home. Mr. Smolak and Appellant had a Zoom visit on September 13, 2023 to discuss Appellant's options once he was discharged from jail. *Trial Transcript*, p. 165. Mr. Smolak scheduled two appointments with Appellant after he was released, but Appellant did not attend. *Id.*, p. 165. Mr. Smolak and Appellant met on December 4, 2023, wherein Appellant was informed of case plan services. *Id.* Appellant informed Mr. Smolak that he did not wish to complete a case plan. *Id.*

**{¶46}** In determining if reasonable efforts have been made by Appellee to reunify the child with the Appellant, "The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case." *Matter of M.G., 2023-Ohio-695* at ¶ 69. There is evidence in the record to show that Appellee attempted to engage Appellant in case plan services, but Appellant chose not to participate. Appellee's efforts were reasonable and diligent under the circumstances of this case. Appellant's final assignment of error is denied.

# CONCLUSION

**{¶47}** The Court hereby affirms the decision of the Tuscarawas County Court of

Common Pleas, Juvenile Division, issued on November 19, 2024.

By: Montgomery, J.

King, P.J. and

Popham, J. concur.