**[Cite as *In re R.M.*, 2025-Ohio-1421.]**

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | |
| R.M. (D.O.B. 01-25-2022) | : | Hon. Andrew J. King, P.J. |
| | : | Hon. Robert G. Montgomery, J. |
| | : | Hon. Kevin W. Popham, J. |
| | : | |
| | : | Case No. 2024 AP 12 0038 |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Tuscarawas County Common Pleas Court, Juvenile Court Division, Case No. 23 JN 00176 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | April 18, 2025 |

APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| LISA VITALE ARNOLD<br>Tuscarawas County Job & Family Services<br>389 16th St., SW<br>New Philadelphia, OH  44663 | RICHARD D. HIXSON<br>3808 James Court, Suite 2<br>Zanesville, OH  43701 |
| Attorney Donovan Hill<br>Guardian ad Litem<br>122 Market Ave. North, Suite 101<br>Canton, Ohio 44702 | Monica DeRamus<br>Guardian ad Litem for Appellant, K.M.<br>116 Cleveland Ave., NW, Suite 705<br>Canton, OH  44702 |

*Montgomery, J.*

## STATEMENT OF THE FACTS AND THE CASE

{¶1}  K.M., the mother of the minor child ("Appellant"), is appealing the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division, awarding Tuscarawas County Department of Job and Family Services ("Appellee") permanent custody of R.M. ("the minor").

{¶2}  The minor was born on January 25, 2022, to Appellant and R.P. ("Father"). The minor is diagnosed with Chung Jansen Syndrome which is a rare genetic condition. Complications from the syndrome include growth and developmental delay, intellectual and learning disability, failure to thrive, near sightedness, seizures, constipation and obesity.

{¶3}  At the time of the minor's removal from Appellant's home, Appellant was living with her boyfriend and the minor's grandmother ("Grandmother") and Grandmother's husband. The home they lived in was in deplorable condition. Appellant and her boyfriend were using methamphetamines and amphetamines in the home. The minor was suffering from severe failure to thrive.

{¶4}  Appellee received emergency custody after a shelter care hearing and filed a Complaint alleging dependency and neglect on June 20, 2023. The minor was found to be dependent and neglected and Appellee was granted temporary custody on August 25, 2023. Several review hearings were held, and the minor remained in the temporary custody of Appellee. Appellant filed her Motion for Change of Legal Custody on May 10, 2024 and Appellee filed its Motion to Modify Prior Disposition to Permanent Custody on

May 15, 2024. The trial court heard both motions and filed its Judgment Entry on November 19, 2024.

{¶5}   A Family Case Plan was filed with the trial court on July 11, 2023. Concerns listed on the case plan include child's severe failure to thrive, poor home conditions, dirty home, animal neglect, drug and mental health concerns and Appellant's intellectual delays. *Judgment Entry*, p.4. The case plan states that Appellant "be able to demonstrate that she can care for her child's special medical needs". That "she learns, understand and articulates normal child behaviors expected from child and non-harmful discipline techniques".  And that she "apply this knowledge and understanding to her care of child on a consistent basis". *Family Case Plan*, p.1. The case plan also ordered Appellant to complete a psychological exam with Dr. Aimee Thomas. *Id.*

{¶6}   Dr. Aimee Thomas, an expert in the field of psychology, completed an evaluation of Appellant and found that Appellant has a full-scale IQ of 40. *Trial Transcript*, p.93. Dr. Thomas testified that Appellant is "functioning at a level of a five and six-year-old in terms of verbal capacity and, as well as non-verbal skills". *Id.* Dr. Thomas opined that, "Individuals functioning within this level require a lot of support towards raising children and a lot of support in order to be safe in the community and to live independent. They would require assistance and may not be able to live completely independently." *Id.* Dr. Thomas attempted to administer several other tests in which Appellant could not complete because of her intellect. *Id.*

{¶7}   Dr. Thomas also evaluated Grandmother and found her to have a verbal IQ of 63 and non-verbal IQ of 48. *Trial Transcript*, p.106. Dr. Thomas found that "this indicates she's functioning at the level of a nine-year-old in terms of verbal skills, and at

the level of a four-year-old in terms of nonverbal skills." *Id.* Dr. Thomas explained that Grandmother is significantly delayed in her ability to "perceive problematic situations, taking information from one situation and applying it to another situation". *Id.*

**{¶8}** The Father of the minor was not involved in the Family Case Plan. The Father of the minor was in and out of jail during the pendency of the case. The Father was not placed on the case plan due to his desire not to complete services. *Judgment Entry*, p.5. Father missed numerous appointments with the case worker. *Id.*

**{¶9}** Appellant participated in supervised visits with the minor. Appellant attended visits regularly. During these visits, Appellant needed help from the visitation aide with providing adequate care for the minor. *Trial Transcript*, p.168. Appellant brought the wrong size diapers on several occasions that left marks on the minor. Appellant also brought candy and other snacks for the minor that he cannot consume. On one occasion, the minor was climbing on a wobbly chair and Appellant did not intervene until the supervisor brought it to her attention. *Id.*, p.168. Based on the observations of Appellant's supervised visits and the Report of Dr. Thomas, the Guardian Ad Litem opined it was not possible for Appellant to independently parent the minor, absent placing the minor in harm's way. *Id.*, p.260.

**{¶10}** Trudy Lewis, the Kinnect to Family specialist gave testimony detailing her efforts to find family members who may want to take placement of the minor. Approximately 20 family members responded but were unable to care for the minor due to his health issues. *Trial Transcript*, p.147-148.

**{¶11}** The trial court denied Appellant's Motion for Change of Legal Custody. *Judgment Entry*, p.8.

**{¶12}** The trial court also found that, "Based upon the facts presented and the recommendation of the Guardian Ad Litem, the Court finds that the minor cannot and should not be placed with either parent within a reasonable time. The evidence supports a finding that despite diligent, reasonable efforts and planning by the Tuscarawas County Department of Job and Family Services to remedy the problems which caused removal of the child, said parents have failed continually and repeatedly to substantially remedy the conditions causing removal." *Judgment Entry*, p.7. The trial court ordered the minor be placed in the permanent custody of Appellee pursuant to R.C. 2151.353(A)(4). *Id.*, p.8.

**{¶13}** Appellant filed a timely appeal to the trial court's decision and asserts the following assignments of error:

**{¶14}** "I.  TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE WHEN IT FOUND THAT THE MINOR CHILD COULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME OR SHOULD NOT BE SO PLACED.

**{¶15}** II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INQUIRE WHETHER THE CHILD WAS A MEMBER OF OR ELIGIBLE FOR MEMBERSHIP IN A FEDERALLY RECOGNIZED INDIAN TRIBE, PURSUANT TO THE INDIAN CHILD WELFARE ACT OF 1978."

### STANDARD OF REVIEW

**{¶16}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established". *Cross v. Ledford,* 161 Ohio St. 469 (1954), paragraph three of the syllabus.  *See In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985).  "Where the degree of proof required to

sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* at 477.

## ANALYSIS

**{¶17}** In her first assignment of error, Appellant claims the trial court erred and abused its discretion when it found by clear and convincing evidence that the minor could not be placed with either parent within a reasonable time or should not be so placed. We disagree with this assignment of error.

**{¶18}** R.C. 2151.414(B)(1) states permanent custody may be granted if the trial court determines, by clear and convincing evidence, that it is in the best interest of the child and:

(a)     The child is not abandoned or orphaned . . . and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b)     The child is abandoned.

(c)     The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d)     The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period.  . . .

(e)     The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an

abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

**{¶19}** R.C. 2151.414(E) sets out the factors relevant to determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent. Said section states in pertinent part the following:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

(1)     Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental

utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2)   Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3)   The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

* * *

(16) Any other factor the court considers relevant.

**{¶20}** During the hearing, the trial court heard testimony from Dr. Jirat Chenbhanich (expert in genetics), Amy Burrier (employee with Ohio Guidestone), Kristina Miller (foster parent of the minor), Trudy Lewis (Kinnect to Family Specialist), Skyler Smolak (caseworker with Appellee), Aimee Thomas, Ph.D, (evaluator), Attorney Donavan Hill (guardian ad litem), J.M. (mother of Appellant), and K.M. (Appellant) and R.P. (Father of the minor).

**{¶21}** Dr. Jirat Chenbhanich testified as to the special needs of the minor. Dr. Chenbhanich stated that the minor, "needs a significant amount of care based on the medical issues that he has. He has some heart differences, some kidney differences. His growth and development, there are some concerns. Feeding issues. He is seeing more than five specialists, so he needs significant amount of care by both the primary care provider, who will be the centralized person, and also all of the specialists". *Trial Transcript*, p. 22.

**{¶22}** After assessing both Appellant and Appellant's mother, Dr. Aimee Thomas stated that "Even if R.M. didn't have these special needs, I would be of the opinion, based on their intellectual capacity and the history, that they would not be able to independently raise this child." *Trial Transcript*, p. 129.

**{¶23}** Appellee caseworker Skyler Smolak relayed to the court that "Appellant required help from the visitation aide to provide adequate care during the visit." *Trial Transcript*, pp.167-168.

**{¶24}** The guardian ad litem testified as to his concerns regarding placement of the minor with Appellant and Grandmother. Mr. Hill testified that he had observed "concerning behaviors in visits with Appellant and the minor in that Appellant was not aware of things that could pose a physical risk to the minor". *Trial Transcript*, p. 248. He informed the court that he had witnessed situations where the minor was placing himself in a dangerous situation and Appellant did not intervene. *Id*.

**{¶25}** Appellant contests the trial court's finding that the agency made diligent, reasonable efforts in satisfaction of R.C. 2151.414(E)(1) and R.C. 2151.419. After evaluating Appellant, Dr. Thomas recommended that Appellant participate in a parenting

skills program. *Trial Transcript*, pp. 95-96. Dr. Thomas also stated in her Report that, "Although Appellant may accrue some benefit from participating in treatment services, 12-step meetings and a parenting skill program, serious questions exist regarding her ability to actually learn, internalize and retain information provided in such programming". *Report,* p. 9. Appellant argues that Appellee had an affirmative duty to follow the recommendation of Dr. Thomas. Specifically, Appellant argues that since Appellee did not refer her to their parenting program, Appellee did not afford Appellant the opportunity to demonstrate that she could complete her case plan. However, Mr. Smolak, caseworker for Appellee, determined that based on Dr. Thomas' comments and the fact that Appellant had already completed a parenting program, "she would not be able to comprehend what was being taught in that class." *Trial Transcript*, p. 163.

**{¶26}** Appellant argues that since Appellee did not recommend a second parenting class for Appellant, Appellee failed to make "reasonable efforts" pursuant to R.C. 2151.419. However, in reviewing this statute, this Court finds that it does not apply to a permanent custody hearing pursuant to R.C. 2151.414. R.C. 2151.419 governs hearings on efforts of agencies to prevent removal of children from homes. R.C. 2151.419 lists the types of hearings where the statute applies and R.C. 2151.414 is not included in that list.

**{¶27}** In determining if reasonable efforts have been made by Appellee to reunify the child with the Appellant, "The issue is not whether there was anything more the agency could have done, but whether the agency's case planning and efforts were reasonable and diligent under the circumstances of the case." *In the Matter of M.G.,* 2023-Ohio-695, at ¶ 69. There is nothing in the record to show that another parenting class would benefit

Appellant's ability to care for the minor. However, there is evidence in the record that after Appellant completed a parenting class, Appellant was unable to progress beyond supervised visitation. Appellee organized supervised visits between Appellant and the minor. However, based on observations of these visits, Appellee continued to have concerns with Appellant's ability to care for the minor without intervention. *Trial Transcript,* p. 5. Appellee made reasonable efforts under the circumstances, but Appellant was unable to remedy the problems which caused removal of the minor.

**{¶28}** Based upon the cited testimony and evidence presented, this Court finds that the trial court had sufficient evidence to find that the minor child could not and should not be placed with either parent within a reasonable time.

**{¶29}** In her second assignment of error, Appellant claims the trial court committed plain error in failing to follow the Indian Child Welfare Act of 1978. We disagree.

**{¶30}** The Indian Child Welfare Act ("ICWA") was enacted "for the protection and preservation of Indian tribes and their resources." *25 U.S.C.A. 1901*(2). Congress was concerned that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies". *25 U.S.C.A. 1901*(4). Congress acknowledged, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe". *25 U.S.C.A. 1901*(3). Therefore, state courts are required to "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the

proceeding, and all responses should be on the record". *25 C.F.R. 23.107*(a). "A court's failure to identify Indian children can nullify court proceedings that have not been conducted in accordance with the Act." *In re L.M.*, 2024-Ohio-5549 ¶ 13 (12th Dist.), citing Adm.Code 5101:2-53-02.

**{¶31}** The permanent custody hearing transcript is devoid of any inquiry as to whether the child was an Indian child. But the Act states the inquiry "is made at the commencement of the proceeding". A dispositional hearing was held on August 25, 2023, at which Appellant was present. The trial court filed a Judgment Entry on August 29, 2023, that adopted the Family Case Plan filed with the court on July 11, 2023 and made it an order of the court. *Judgment Entry*, p. 1. The Family Case Plan clearly states that the minor child is not protected by ICWA. *Id.*

**{¶32}** The Act applies to an "Indian child" that means "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe". *25 U.S.C.A. 1903*(4). We note Appellant does not argue to this court that the minor is an Indian child or eligible for membership in a tribe. There is no indication the minor is of Indian heritage or meets the criteria of *25 U.S.C.A. 1903*(4).

**{¶33}** As cited by Appellant in her appellate brief at 17, Ohio courts have nullified determinations terminating parental rights and granting permanent custody to the agency in cases where the Act has not been followed. *In re L.M.*, 2024-Ohio-5549 (12th Dist.); *In re D.E.,* 2021-Ohio-524 (10th Dist.); *In re R.G.,* 2016-Ohio-7897 (8th Dist.). But we find these cases to be distinguishable. In *L.M.,* there was no indication that mother was put on notice of the potential for the Act to apply. Here, Appellant was put on notice via

the Family Case Plan.  In *D.E.,* the trial court failed to make a proper inquiry after mother claimed to have Native American heritage in her background.  Here, there was no indication of Indian heritage.

**{¶34}**  Even assuming arguendo that the trial court failed to properly inquire, based on the state of the record before us, we cannot say that but for this "plain error" the Act would have been found to apply. Because Appellant did not raise this issue in the trial court, she has forfeited all but plain error on appeal.  *In re S.M.*, 2025-Ohio-34, ¶ 15 (9th Dist.).  Civil plain error is "error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself".  *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.  In applying the doctrine, reviewing courts "must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings".  *Id.* at 121.

**{¶35}**  We do not find any plain error that seriously affected the legitimacy of the underlying proceedings or caused a manifest miscarriage of justice.

**{¶36}**  Assignment of Error II is denied.

## CONCLUSION

**{¶37}** The Court hereby affirms the decision of the Tuscarawas County Court of Common Pleas, Juvenile Division issued on November 19, 2024.

By: Montgomery, J.

King, P.J. and

Popham, J. concur.